UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CORA CLARK and JAMES B. WILLIAMS, Co-Administrators of the Estate of Treva M. Williams, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 1:08-cv-0710-RLY-TAB |
| WILLIAM J. RITTER, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| ALLSTATE INDEMNITY COMPANY, Defendant/Garnishee Defendant. | ) ) | |

**ORDER GRANTING DEFENDANT/GARNISHEE DEFENDANT'S
SUMMARY JUDGMENT MOTION AND DENYING
PLAINTIFFS' SUMMARY JUDGMENT MOTION**

This matter is before the court on cross-motions for summary judgment filed by Defendant/Garnishee Defendant, Allstate Indemnity Company ("Allstate"), and Plaintiffs, Cora Clark and James B. Williams, who are the co-administrators of the Estate of Treva M. Williams (the "Estate"). The standard for determining whether a summary judgment should issue when both parties to a dispute assert entitlement to relief is unchanged from that which applies when only one party seeks relief. Summary judgment is available where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The court draws all reasonable inferences from undisputed facts in favor of the non-moving party and views the disputed evidence in the light most

favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). However, non-moving parties may not rest upon mere allegations in their pleadings or upon conclusory statements; rather, they must go beyond the pleadings to support their contentions with properly admissible evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

**Factual Background[1]**

On October 6, 2003, William Ritter ("Ritter"), age 18, and his mother, applied for automobile insurance at an Allstate agency on Smith Valley Road in Greenwood, Indiana. The insurance was sought in William Ritter's name and it was represented that he was living at his parent's house though he had recently moved out and was living at the Martinsville home of his girlfriend, Heather Williams, age 16, and her parents, James and Treva Williams ("Treva"). Allstate issued the insurance policy requested, with William Ritter as the only listed driver and a 1995 Saturn as the only listed automobile. The

---

[1] The local rules require that the party responding to a summary judgment motion include a section in their brief "labeled 'Statement of Material Facts in Dispute' which responds to the movant's asserted material facts by identifying the potentially determinative facts and factual disputes which the nonmoving party contends demonstrate that there is a dispute of fact precluding summary judgment." S.D. IND. Local Rule 56.1(b). In response to Allstate's Motion for Summary Judgment, Plaintiffs have supplied such a section wherein they challenge only two of Allstate's factual assertions, leaving the remainder unchallenged. The two factual assertions with which Plaintiffs take issue are whether Allstate received notice of the automobile crash involving William Ritter and the decedent from Ritter's father a few days after it occurred and whether Allstate received a letter and copy of a wrongful death lawsuit from the attorneys for the decedent's estate. Accordingly, in setting forth the relevant factual background, the court has drawn from the undisputed facts as set forth in Allstate's brief, but has not included Allstate's assertion of lack of notice as an undisputed fact.

policy limits for bodily injury were $50,000 per person and $100,000 per occurrence.

On November 17, 2003, Ritter, and the Williams family were at the Williams' home drinking alcohol with a friend, Jamie Curry ("Curry"). James Williams was teasing Treva Williams with a bag containing a white powdery substance, which, according to Heather Williams, caused her mom to "flip out" because she [Treva] had a bad cocaine addiction. Later, Ritter, Curry and James Williams left in Curry's car, which was uninsured. After Curry and James Williams were dropped off at a home outside of Martinsville, Ritter was told to drive the car back to the Williams' home, but was instructed by James Williams not to drive Treva Williams to Indianapolis, for fear that she would try to locate illegal drugs.

Back at the house with Treva and Heather Williams, Treva asked Ritter if he would take her to Indianapolis. Ritter did not take Treva Williams to Indianapolis, but he did drive her to a couple of houses in Martinsville, in search of her former boyfriend. While Treva was inside the second house they traveled to, she and another visitor at the home, Tammy Clements, engaged in a verbal argument which eventually erupted into a physical fight, prompting a call to 911 and a battery complaint. Ritter, who was waiting in the car, was waived into the house by the woman who lived there, Brenda Leonard. Leonard sought Ritter's help in breaking up the altercation, which he did by tackling Treva, and then escorting her to the car. At the request of Treva, Ritter then drove away from Leonard's home, in hopes of avoiding the police. Their hopes went unfulfilled as

the police pursued Ritter and Treva after learning of their departure from Leonard's home.

Shortly after leaving the Leonard home, Ritter saw at least one police vehicle behind him with its emergency lights on while attempting to pull him over. In his words, Ritter "ran from them," reaching speeds of 60 miles an hour in a residential area. He eventually pulled into the parking lot of the local National Guard Armory, where Ritter states that he and Treva switched seats and she began to drive. With the police in chase, Ritter states that Treva "gunned" the car and lost control, hitting a guardrail and rolling the vehicle, which landed on its roof. Treva was partially ejected from the vehicle and died instantly from the crash. The Officer's Standard Crash Report, which was completed following the crash, states that, after pulling into the parking lot at the Armory, the car the police were chasing nearly came to a complete stop before speeding off at a high rate of speed and hitting a guardrail near the parking lot exit.

After an investigation, the police concluded that Treva was not driving the vehicle at the time of the crash; Ritter was. He was arrested a month later and charged with Resisting Law Enforcement Resulting in Death, Reckless Homicide, and Illegal Possession of an Alcoholic Beverage. Though he testified in his deposition that he was not driving at the time the vehicle actually crashed, he also provided the following testimony at his deposition in this lawsuit:

> Q.  At the time of the accident you were involved in the crime of fleeing a

4

>police officer, right?
>A. Yes.
>Q. At the time of the accident you were speeding in the vehicle. Is that correct?
>A. Yes.
>Q. Did you understand that there was a risk of injury as a result of those actions?
>A. Yes.
>Q. And, in fact, Treva was injured. Correct?
>A. Yeah.
>Q. Would you agree that the accident which occurred on November 17, 2003, occurred while you were committing a criminal act?
>A. Yes.

Ritter eventually pled guilty to a class D felony of Resisting Law Enforcement.

Consistent with his continued insistence that he was not driving the vehicle at the time of the crash, Ritter admits he never contacted Allstate to report that he had been involved in an automobile accident. His father, Charles Ritter, has testified in deposition that he contacted Allstate with regard to the accident a few days after it happened. According to Charles Ritter, he called the Smith Valley Allstate branch because he realized that Ritter could not contact the insurer because he was incarcerated. He states that he spoke with a male adjuster, told the person that a death was involved and was assured by the adjuster that everything was in good hands and would be taken care of. Allstate challenges this assertion, contending that there are at least four reasons not to believe William Ritter's father: (1) William Ritter was not arrested and taken into custody until December 12, 2003, nearly four weeks after the accident; (2) there were no male employees at the Allstate Agency on Smith Valley Road during that time period; (3)

5

there were no claim adjusters employed at the Smith Valley Road Allstate agency; and (4) any report of a claim to an agency is handled one of two ways, neither of which is to simply tell the insured or person reporting it not to worry - "it will be taken care of."

William Ritter was released from custody on January 14, 2004, pursuant to a bail bond paid for by James Williams.  A letter was sent to Ritter at his parents' address on April 28, 2004, by attorney Kenn Nunn of the Nunn & Greene law offices.  The letter informed Ritter that the firm was representing the Estate of Treva Williams and asked that he call the law firm to advise it of any insurance policy he might have.  Neither Ritter nor his parents responded to the letter or forwarded it to Allstate.  Another letter was sent to Ritter by Ken Nunn on September 15, 2004, indicating that Nunn had learned from his investigator that Ritter was insured by Allstate and asking Ritter or his insurer to fill out an enclosed form and return it to the attorney.  Ritter did not forward the letter or form to Allstate.

Allstate claims it first became aware of the accident on September 24, 2004, when it opened a claims file after receiving a phone call from the Nunn & Greene law offices.  The claim was assigned to Allstate claims representative, Rae Ann Demick ("Demick"), who handled Indiana losses which involved parties represented by legal counsel.  As a follow-up, the Nunn & Greene law office faxed a representation letter referring to the claim number which the earlier telephone conference had prompted. On September 27, 2004, Demick contacted Nunn & Greene by telephone and spoke with  the Nunn &

Greene case manager assigned to the case. The case manager informed Demick that no lawsuit had been filed yet, but that the law firm was representing, Cora Clark, the mother of Treva Williams. The case manager also told Demick that Allstate's insured was operating a non-owned auto, and that the non-owned auto was uninsured. The case manager at the law firm later faxed to Demick, at her office in Grand Rapids, Michigan, an affidavit of no insurance from Curry and a copy of the officer's Standard Crash Report.

Demick began her investigation after reviewing the crash report, attempting to contact Ritter and any witnesses. She sent Ritter a letter dated September 28, 2004, addressed to his parents' home (which was the address listed on the crash report and on the policy), asking that he contact her as soon as possible and asking him to forward to her any summons or complaint that he might be served. Demick sent additional letters and made several phone calls in an effort to speak with Ritter. She received a phone message on October 6, 2004, from Ritter's mother, indicating that he did not live with his parents and that Ritter was not driving the vehicle at the time of the crash. A follow-up call to Mrs. Ritter resulted in Demick learning that Ritter was living with Heather Williams, who was pregnant with Ritter's child, either at the home of Cora Clark or at another friend's home. Mrs. Ritter also informed Demick of the pending criminal case against Ritter and stated that Cora Clark had pledged to devote any settlement money from the claim to helping Ritter and Heather raise their child.

Demick was finally able to speak with Ritter via telephone when she located him at a friend's house by using one of the phone numbers provided by Ritter's mother. Ritter acknowledged Demick's previous efforts by immediately asking her if she was the one sending him all the letters. Ritter then went on to insist that he was not driving the vehicle when it crashed. He refused Demick's request for a recorded statement, claiming a lack of time. He did, however, indicate that he would call Demick back the following day. Demick did not receive a phone call from Ritter the following day and when she called the number where she reached him the previous day, she was informed that Ritter only occasionally stayed at that residence and did receive mail there. Accordingly, Demick sent a certified letter to Ritter at his parents' address, informing him that Allstate was reserving its rights under the policy due to his failure to cooperate, but the company would continue to investigate.

The only witness listed on the crash report provided Demick with a statement in which he said he did not see who was driving the vehicle when it crashed. Demick exchanged phone messages with Ritter's court appointed attorney during December 2004, and was told that an accident reconstruction expert was being hired in an attempt to confirm Ritter's claim that he was not driving the vehicle at the time of the crash. She then sent a letter to Nunn & Greene on January 4, 2005, with an update on the claim, including information with respect to the pending criminal matter and Ritter's ongoing contention that he was not driving the vehicle. Demick's supervisor noted in the claim

file on January 25, 2005, that Allstate could not complete its liability assessment until they were able to speak to Ritter. Continued efforts to do so were unavailing.

Demick left her employment with Allstate at the end of February 2005, and the file was turned over to another claims representative, Nancy Lynn White ("White"). A lawsuit was filed by the Estate of Treva Williams against William Ritter in the Morgan Circuit Court on October 7, 2005. Ritter was served with the suit papers on October 14, 2005, but never forwarded the documents to Allstate. He admits that he never informed Allstate of the civil lawsuit against him. The Nunn Law Office (which took over representation of the Estate from Nunn & Greene) claims to have sent a courtesy copy of the complaint with a cover letter dated October 5, 2005, to Allstate, addressed to Rae Ann Demick at Allstate's Grand Rapids office. Allstate claims it has no record of receiving the letter or a copy of the complaint and that any mail addressed to Demick would have been forwarded to White for inclusion in the claim file.

Ritter pled guilty to Class D felony resisting law enforcement with a motor vehicle on November 1, 2005. Allstate was not informed of the plea agreement by Ritter or his attorney and Ritter was incarcerated following the plea. He was served with an alias summons for the civil lawsuit while he was in jail and on January 13, 2006, Ritter sent a handwritten letter to the court seeking the appointment of an attorney to defend him. The state court deemed Ritter's letter to be an answer to the complaint. On January 30, 2006, Ritter forwarded a handwritten "Response to Plaintiff's Complaint for Damages" in

9

which he denied all the Plaintiff's allegations, repeated his request for appointment of legal counsel, and asked the court not to pass judgment against him summarily.  No notice was provided to Allstate.

On February 20, 2006, Ritter sent a letter to the Nunn Law Office, providing his new address on south Main Street in Martinsville.  Additionally, Ritter informed the attorneys that he was not the driver of the vehicle at the time of the crash and, if he had been driving, he was insured and the matter should be taken up with his insurer.  He did not inform Allstate of this letter or provide Allstate with his new address.  The Nunn firm followed up by writing a letter back to Ritter asking him to identify his insurer, though the Nunn & Greene firm had earlier corresponded with Allstate and been given a claim number.

Unaware of the lawsuit filed against Ritter, White's supervisor at Allstate asked her to check on the statute of limitations issues with regard to the claim which Nunn & Greene had originally reported on behalf of the Estate.  After checking the file and finding no further communication from Nunn & Greene, and noting the two-year statute of limitations would have run in November of 2005, White closed the claim file on July 3, 2006.  The file was shipped for storage to Allstate's Camby, Indiana office.

The civil suit against Ritter continued, with Ritter remaining unrepresented and the Estate being represented by the Nunn Law Office.  On May 2, 2007, attorney Brad Smith

of the Nunn firm sent a non-party request for production in the civil lawsuit to Allstate at its Grand Rapids office, in care of Rae Ann Demick, seeking a copy of Ritter's policy. Because the file had been closed and sent to Camby for storage, the non-party request was forwarded to Allstate's in-house legal counsel in Camby, who responded by sending a copy of the policy to attorney Smith.

At some point, Ritter moved to Michigan to live with Heather at Cora Clark's residence. Clark, Heather's grandmother, has at all times been a plaintiff in the lawsuit against Ritter, as an administrator of the Estate. After some time, Clark determined that Ritter should move out and she helped him pay for a hotel room nearby. Ritter never showed up for the final pretrial conference in the civil case, which was held on March 19, 2008, nor did he attend the trial held on March 31, 2008. He claims Cora Clark was supposed to arrange for him to ride with her and another woman, Linda Steinhouse, to the trial, but that the ride fell through. With Ritter not in attendance, the jury in the Morgan County wrongful death case awarded the Estate $3,000,000.00, reduced to $2,700,000.00 for Treva Williams' own negligence.

The Nunn Law Firm corresponded with Cora Clark through the mail by sending her materials at a post office box, in care of Linda Steinhouse. Following the trial, the firm corresponded with both Clark and Ritter in that same fashion. On May 7, 2008, attorney Lee Baker of the Nunn firm sent a letter addressed to Linda Steinhouse ("Steinhouse") and included an Assignment & Covenant Not to Execute ("Assignment")

which he asked Steinhouse to have Cora Clark and Ritter sign.[2] He explained that there would be no pursuit of Ritter's assets if the Assignment was executed, only the insurance proceeds would be tapped. Two weeks later, Baker sent a letter addressed to both Cora Clark and Ritter, in care of Steinhouse, informing them that proceedings supplemental had been scheduled in the civil lawsuit to establish that Ritter had been insured by Allstate, which would open the door to the pursuit of Allstate for the full judgment.

During the proceedings supplemental, Allstate became a garnishee defendant and removed the case to this court. The Estate also filed a bad faith action against Allstate in Morgan Circuit Court, claiming that Allstate should be liable for the entire judgment against Ritter because its failure to defend him in the wrongful death action was in bad faith. That case was removed to this court as well and consolidated with the proceedings supplemental. Subsequently, the Estate filed an Amended Complaint in two counts, asserting a breach of the duty to defend and a claim that Allstate acted in bad faith.

---

[2]The Assignment was executed by Ritter, but since executing the Assignment he has testified in deposition that parts of the document are inaccurate. Specifically, he testified that he was not driving the car as the Assignment states, that he did not request that Allstate provide him a defense and he did not believe that Allstate had done anything wrong. He states he has no idea what type of claims he would have against Allstate, but that he was told by Cora Clark and Steinhouse that he should sign the Assignment so that he would not have to be in debt for the judgment.

**Analysis**

Both the Estate and Allstate have moved for summary judgment on the Estate's claims. The parties agree that Indiana law applies, but the agreement ends there. Citing *Frankenmuth Mut. Ins. Co. v. Williams*, 645 N.E.2d 605 (Ind. 1995), the Estate argues that the applicable case law supports its contention that Allstate had sufficient notice to require it to step in and defend Ritter and, by not doing so, it breached both the insurance contract and its duty to deal in good faith with its insured. Allstate, on the other hand, contends that it acted as any prudent insurer would under the circumstances and that it has several policy-based reasons for not providing a defense to Ritter.

Like many jurisdictions, Indiana views an insurer's duty to defend as being broader than its duty to indemnify. *Liberty Mut. Ins. Co. v. OSI Industries, Inc.,* 831 N.E.2d 192, 198 (Ind. App. 2005). The duty to defend turns on the allegations contained within the complaint and those facts ascertainable by the insurer after reasonable investigation. *Id.* If the insurer's independent investigation of the facts underlying the complaint against its insured reveals that the claim is patently outside the risk covered by the policy, the insurer may refuse to defend. *Freidline v. Shelby Ins. Co.,* 774 N.E.2d 37, 43 (Ind. 2002).

In *Frankenmuth*, the Supreme Court of Indiana analyzed the issue of whether the insurer had sufficient notice to require it to defend its insured. If an insurer has sufficient

notice of the claim against its insured and elects not to defend, it does so at its own risk because it will be bound by those issues necessarily decided in the lawsuit against its insured. *Frankenmuth*, 645 N.E.2d at 608; *see also State Farm Fire & Casualty v. T.B.,* 762 N.E.2d 1227 (Ind. 2002). The insurer in *Frankenmuth* received the first notice of a suit against its insured through a non-party request for production which accompanied a subpoena duces tecum. *Frankenmuth*, 645 N.E.2d at 606. In addition to contending that Allstate had been sent a courtesy copy of the lawsuit (a disputed fact), the Estate argues that the non-party request Allstate received was ample notice to Allstate that its insured had been sued and that it was required to defend Ritter against the allegations that he had negligently caused the death of Treva Williams in the wrongful death lawsuit. However, the issue of notice is actually a red herring here.

There is no question that Allstate was put on notice by Nunn & Greene that the Estate intended to pursue a claim against Ritter. Rae Ann Demick of Allstate investigated the circumstances of the crash in anticipation of the lawsuit and sent a reservation of rights letter to Ritter after he failed to provide her with a statement. Demick's investigation also led to the inevitable conclusion that there were only two possible sets of circumstances. Either the car involved in the accident was being driven by Ritter during the course and scope of his commission of a criminal act, or Treva Williams was driving the vehicle at the time it crashed. In either case, Allstate argues, indemnification was clearly not implicated and no duty to defend attached. The court agrees.

14

The Allstate policy contains a provision which excludes coverage, the specific language of which states:

> Allstate will not pay for any damages an insured person is legally obligated to pay because of :
> ...
> 10. bodily injury or property damage intended by, or reasonably expected to result from, the intentional or criminal acts or omissions of an insured person. This exclusion applies even if:
> ...
> > C. Such bodily injury or property damage is of a different kind or degree than intended or reasonably expected.
>
> This exclusion applies regardless of whether an insured person is actually charged with, or convicted of, a crime.

Allstate contends that the unambiguous language of this exclusion precludes coverage even if its insured is lying and it were determined that Ritter was actually driving the vehicle. The Estate points to cases which have narrowly construed exclusions denying coverage for intentional acts and contends that, at a minimum, a question of fact exists as to whether the exclusion applies. Ritter testified at deposition that he did not intend to injure Treva Williams, so, according to the Estate, only if her injury was "practically certain" would the exclusion apply to negate coverage. *See Coy v. National Ins. Ass'n*, 713 N.E.2d 355, 360 (Ind. App. 1999); *Bolin v. State Farm Fire and Casualty Co.,* 557 N.E.2d 1084, 1088 (Ind. App. 1990).

The Estate's arguments might be more convincing if they were based on cases which have interpreted "criminal acts exclusions" as opposed to "intentional acts

15

exclusions." The difference is significant, and the Supreme Court of Indiana has not had occasion to interpret a criminal acts exclusion. On the other hand, Allstate has brought to the attention of the court, several cases which have interpreted the criminal acts exclusion under Indiana law. Each of the cases involved the criminally reckless firing of a gun and resulting injuries which the insureds all claimed were not intended. In each case the Courts concluded that, by any objective standard, bodily injury could be reasonably expected from the insured's actions and, thus, the criminal acts exclusion applied. *Allstate Ins. Co. v. Brown*, 16 F.3d 222, 224 (7th Cir. 1994); *Allstate Ins. Co. v. Barnett,* 816 F.Supp. 492, 496-97 (S.D.Ind. 1993); *Allstate Ins. Co. v. Norris,* 795 F.Supp 272, 275-76 (S.D.Ind. 1992).

In addition, Allstate has cited a case from another jurisdiction setting forth a simple conclusion which the court finds quite persuasive. In *Allstate Ins. Co. v. Sowers,* 776 P.2d 1322 (Or. App. 1989), the Court was faced with the very same policy exclusion and a circumstance where a law enforcement officer was injured in the course of the insured resisting arrest, a criminal violation for which the insured was found guilty. *Id.* at 1322-23. In finding that the exclusion clearly applied, the court stated: "Nothing prevents the parties from agreeing to exclude coverage for losses from criminal acts. Given the clarity of the exclusion, only Sowers, not Allstate, is responsible for the financial consequences of his crime." *Id.* at 1323. The Court in *Sowers* may have been applying Oregon law, but the law in Indiana is no different with regard to the parties' freedom to

16

agree on what will and will not be insured within an insurance contract. "Ordinarily, an insurance company may limit its liability in any manner not inconsistent with public policy." *Lexington Ins. Co. v. American Healthcare Providers,* 621 N.E.2d 332, 338 (Ind. App. 1993). Consistent with public policy, in this instance, Allstate sought to limit its liability.

The Estate also cites to *Frankenmuth* for the proposition that Allstate is collaterally estopped from challenging the jury's determination that Treva was killed as a result of Ritter's negligent actions. However, that is another red herring. Ritter may well have been negligent, but negligence and criminal activity are not mutually exclusive. In addition to acting negligently, Ritter's actions were also criminal, and as a foreseeable result of those actions, Treva was killed. The bottom line is this - an insurer which has chosen not to defend its insured is not foreclosed from later raising an issue which was not decided in the course of the earlier litigation. *See State Farm Fire & Casualty v. T.B.*, 762 N.E.2d 1227, 1231 (Ind. 2002).

Allstate has raised other defenses which it claims negated any obligation it may have had to defend Ritter, including Ritter's misrepresentations in connection with the procurement of the policy and his breach of the insured's obligations under the policy to promptly notify the company of an accident and provide it with a statement if requested. Because the court finds that the criminal acts exclusion applies to negate any obligation Allstate may have had to provide Ritter with a defense to the wrongful death action, the

court need not reach these or any other additional defenses raised by Allstate.

## Conclusion

Applying the law of Indiana as it believes the Supreme Court of Indiana would, this court finds that the criminal acts exclusion to coverage, in the Allstate policy issued to William Ritter, relieved Allstate of any obligation to defend or indemnify Ritter against the wrongful death claim pursued by the Estate of Treva Williams, and it also finds that Allstate did not act in bad faith. Accordingly, Plaintiffs' Motion For Summary Judgment (Docket # 45) is hereby **DENIED**. Defendant/Garnishee Defendant's Motion For Summary Judgment (Docket # 48) is hereby **GRANTED** and Defendant/Garnishee Defendant's Motion For Oral Argument (Docket # 50) is **DENIED AS MOOT**. A separate judgment shall issue in favor of Defendant/Garnishee Defendant Allstate Indemnity Company.

**SO ORDERED 17th** day of May 2010.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Dean J. Arnold
NUNN LAW OFFICE
deana@kennunn.com

Lee F. Baker
NUNN LAW OFFICE
leeb@kennunn.com

Thomas David Collignon
COLLIGNON & DIETRICK PC
tcollignon@cdattorneys.com

Patrick Joseph Dietrick
COLLIGNON & DIETRICK
pdietrick@cdattorneys.com

Ryan Daniel Etter
COLLIGNON & DIETRICK, P.C.
retter@cdattorneys.com

Michael B. Knight
COLLIGNON & DIETRICK, PC
mknight@cdattorneys.com